1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES BRANCH,

11              Petitioner,                    No. CIV S-08-CV-2761 JAM CHS P

12        vs.

13   JAMES A. YATES,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16                              **I.  INTRODUCTION**

17              Petitioner, Charles Branch, is a state prisoner proceeding *pro se* with a petition for

18   writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate

19   sentence of fifty years to life following his convictions by jury trial in the Solano County Superior

20   Court, Case No. FCR215293, for first degree murder with a penalty enhancement for personally and

21   intentionally discharging a firearm to cause death.  With this petition, Petitioner presents various

22   claims challenging the constitutionality of his conviction.

23                              **II.  CLAIMS FOR REVIEW**

24              Petitioner sets forth four grounds for relief in his pending petition.  Specifically,

25   Petitioner's claims are follows:

26              (1)     The jury's finding of guilt was based on constitutionally

                                         1

insufficient evidence, in violation of Petitioner's Fourteenth Amendment right to due process of law.

(2)     The trial court violated his state and federal rights to due process of law by allowing a police officer to testify as an expert on suicide by women and advising the jury that the victim's death was not the result of a suicide.

(3)     Trial counsel rendered prejudicially ineffective assistance by failing to object to admission of evidence at trial that Petitioner threatened a neighbor with a gun in 1988.

(4)     Appellate counsel rendered prejudicially ineffective assistance by (a) failing to make a claim regarding the insufficiency of the evidence relied upon by the jury to convict Petitioner at trial; and (b) failing to "federalize and argue" issues two and three, stated above.

Based on a thorough review of the record and applicable law, it is recommended that the petition be denied.

## III. BACKGROUND

The basic facts of Petitioner's crimes were summarized in the partially published opinion[1] of the California Court of Appeals, First Appellate District, as follows:

> Shortly after 11:00 a.m. on March 19, 2004, [Petitioner] called 911 to report that his wife was bleeding from the head and was not breathing.
>
> Robert Silva, [Petitioner's] neighbor, testified at trial that he spoke with [Petitioner] earlier that morning and that [Petitioner's] behavior appeared to be "normal." They spoke for about 10 to 15 minutes, after which they each went back to their houses.
>
> Approximately 10 minutes later, Silva heard another neighbor yelling. Silva went outside and saw [Petitioner] in front of his house speaking on his telephone. [Petitioner] appeared upset. He told Silva that Shirley was in the bedroom.
>
> Silva walked into the bedroom and saw Shirley lying on the bed. Her left side was covered by the bed covers. He saw that she had a gunshot wound to her head. The blood around the wound was black and appeared to be dried or clotted. It was not dripping. When he

---

[1] The appellate court's full opinion in *People v. Charles Branch*, No. A113421, was lodged in the record as Exhibit E on March 25, 2009.

2

touched her to see if she had a pulse, Silva observed that her body was cool and her skin color was cyanotic (bluish in color).  He then noticed a firearm on the right side of the bed.  It was about four to six inches from Shirley's wrist.

Officer Gary Anderson arrived at [Petitioner's] house shortly thereafter.  Silva walked Anderson to the bedroom.  At trial, Anderson testified that Shirley was lying on the bed with her right arm outside of the bed coverings and that there was a handgun near her right hand.  There was a gunshot wound in the area of her right temple.  The blood around the wound was coagulated and there was blood on the pillow and the sheets.  When he touched her wrist to check for a pulse he noticed that her body temperature appeared to be cooler than normal.

Anderson spoke with [Petitioner], who reported that he had eaten breakfast with Shirley that morning and that she had gone back to bed afterwards while he went out to mow the lawn.  He came back into the house later and found his wife nonresponsive.  He said he did not know what was wrong with her.

At trial, Anderson said that he became somewhat suspicious because out of the many suicides involving females that he had worked there had always been a suicide note and only two of the women had used a gun to kill themselves.

Later that day Officer Nancy Sanchez interviewed [Petitioner] at the hospital, where he had been taken after complaining of chest pains.  He told her essentially the same story that he had told Anderson regarding his and Shirley's activities of that morning.  He also said that he had not noticed a weapon when he entered the bedroom and discovered his wife.

When asked about their relationship, [Petitioner] reported that he and his wife had a very loving relationship, that they were "inseparable," and that there were no problems in their relationship.  He denied having anything to do with his wife's death.

Sanchez interviewed [Petitioner] again about a month later.  By this time, the investigating officers were aware of many additional facts.  They had learned that [Petitioner] had been having an affair with a woman named Natalie Parks for some time prior to his wife's death.  Additionally, toxicology reports showed that Shirley had a substantial amount of Valium in her system at the time of her death.  Gunshot residue had been found on both of her hands, including the hand that had been under the blanket. [Petitioner's] fingerprints had been found on the gun and tests showed that he had gunshot residue on his hands on the day he reported his wife's death.  Sanchez also knew that [Petitioner] had obtained a prescription for Valium three weeks before Shirley died.

3

1   When confronted with these facts, [Petitioner] initially denied having
    been prescribed Valium. He also denied having an affair, but later
2   admitted it. He also eventually admitted that he had lied about how
    his wife had died. He told Sanchez that he had entered the bedroom
3   and had seen his wife pointing the gun to her head. The gun
    discharged when he tried to grab it from his wife's hand. He stated
4   that his finger could have been on the trigger when the gun went off.

5   [Petitioner] said he waited only a few seconds before calling 911 and
    admitted that he lied to the dispatcher about what had happened to his
6   wife. When confronted with contradictory physical evidence, such
    as the fact that her body was already cool when Silva checked for her
7   pulse, and that the blood around the wound had already dried,
    [Petitioner] could not explain the discrepancies. He was placed under
8   arrest.

9   [Petitioner] was tried by a jury. On February 17, 2006, the jury found
    [Petitioner] guilty of first degree murder and found the firearm
10  enhancement to be true.

11  On March 15, 2006, the trial court sentenced [Petitioner] to 25 years
    to life for the murder and 25 years to life for the enhancement. This
12  appeal followed.

13  (Lodged Exhibit E at 1-3.)

14          The California Court of Appeal affirmed both Petitioner's conviction for first degree

15  murder as well as the firearm penalty enhancement with a reasoned opinion on November 27, 2007.

16  Petitioner then sought review in the California Supreme Court. That petition was denied without

17  comment on February 13, 2008. Petitioner next sought *habeas corpus* relief in the California

18  Supreme Court. His petition was denied by without comment on September 17, 2008. Petitioner

19  filed this federal petition for writ of *habeas corpus* on October 28, 2008. Respondent filed an

20  answer on March 25, 2009. Petitioner filed his traverse on April 6, 2009.

21          **IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

22          This case is governed by the provisions of the Antiterrorism and Effective Death

23  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

24  its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

25  F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a

26  person in custody under a judgment of a state court may be granted only for violations of the

4

Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000).  Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Although "AEDPA does not require a federal habeas court to adopt any one methodology," *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), there are certain principles which guide its application.

First, AEDPA establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  Accordingly, when determining whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Provided that the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief.  *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232 F.3d 1031, 1035 (9th Cir. 2000).  Conversely, when it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential standard does not apply and a federal court must review the claim *de novo*.  *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381).  In other words, "clearly established Federal law" will be " the governing legal principle or principles set forth by [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64.

1  It is appropriate, however, to examine lower court decisions when determining what law has been

2  "clearly established" by the Supreme Court and the reasonableness of a particular application of that

3  law.  *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

4          Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

5  "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause,

6  a federal court may grant a writ of *habeas corpus* only if the state court arrives at a conclusion

7  opposite to that reached by the Supreme Court on a question of law, or if the state court decides the

8  case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*,

9  529 U.S. at 405.  It is not necessary for the state court to cite or even to be aware of the controlling

10  federal authorities "so long as neither the reasoning nor the result of the state-court decision

11  contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Moreover, a state court opinion need not

12  contain "a formulary statement" of federal law, but the fair import of its conclusion must be

13  consistent with federal law.  *Id*.

14          Under the "unreasonable application" clause, the court may grant relief "if the state

15  court correctly identifies the governing legal principle...but unreasonably applies it to the facts of

16  the particular case." *Bell*, 535 U.S. at 694.  As the Supreme Court has emphasized, a court may not

17  issue the writ "simply because that court concludes in its independent judgment that the relevant

18  state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*,

19  529 U.S. at 410.  Thus, the focus is on "whether the state court's application of clearly established

20  federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

21          Finally, the petitioner bears the burden of demonstrating that the state court's

22  decision was either contrary to or an unreasonable application of federal law.  *Woodford*, 537 U.S.

23  at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

24                        **V.  DISCUSSION**

25  **A.  DUE PROCESS**

26          Petitioner contends in two separate but related claims that his conviction is in

1  violation of his right to due process of law.  First, Petitioner claims that the jury's finding of guilt

2  was based on constitutionally insufficient evidence.  Petitioner's second claim is that the trial court

3  erred in allowing a police officer to testify as an expert on suicide by women and by advising the

4  jury that the victim's death was not the result of a suicide.

5  **1. SUFFICIENCY OF EVIDENCE**

6          Petitioner claims that insufficient evidence supported his jury conviction under

7  section 187(a) of the California Penal Code, which provides that "[m]urder is the unlawful killing

8  of a human being...with malice aforethought."  More specifically, he claims that "[a]bsolutely no

9  direct evidence [was] presented at trial to prove [beyond a reasonable doubt that] Petitioner shot and

10 killed his wife Shirley Branch."  Although Petitioner admits that he was not initially truthful with

11 investigating officers regarding the circumstances surrounding Shirley's death and his discovery of

12 her body, he contends that he subsequently explained his reluctance as fear that he would implicate

13 himself in Shirley's death.  Petitioner also contends that he offered legitimate explanations for the

14 seemingly incriminating circumstantial evidence offered against him at trial–such as the various lies

15 he told to investigating officers, his fingerprints on the gun, the gunshot residue on his hands, the

16 amount of Valium his wife had consumed, and his affair with Natalie Parks–that actually negated

17 the incriminating value of such evidence.  According to Petitioner, because the prosecution did not

18 prove beyond a reasonable doubt that he killed Shirley, the modifying factors, that the murder was

19 unlawfully committed with malice aforethought, were inapplicable to him.  Petitioner raised this

20 claim for the first time in his petition for writ of *habeas corpus* filed in the California Supreme

21 Court.  Because that court denied review of his petition without comment, there is no reasoned

22 opinion for this court to review.  Thus, the court will "independently review[] the record to

23 determine whether *habeas corpus* relief is available under section 2254(d)."  *Hines v. Thompson*,

24 336 F.3d 848, 853 (9th Cir. 2003).

25          The Due Process Clause of the Fourteenth Amendment "protects the accused against

26 conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  On *habeas corpus* review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Indeed, the prosecution is not required to "rule out every hypothesis except that of guilt," and the reviewing court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992) (internal citations omitted).  It is the province of the jury to "resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  *See also Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*.").  Lastly, the factual findings of the state court are presumed to be correct on federal *habeas corpus* review.  28 U.S.C. §2254(e)(1).  *See also Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to the determinations of both a state trial court and a state appellate court. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990).  Accordingly, "[a] petitioner for a federal writ of *habeas corpus* faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. V. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

Sufficiency of the evidence claims are judged by "the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. Here, Petitioner argues that there was insufficient evidence to support the jury finding that he in fact killed Shirley, which was

1   required for Petitioner's conviction for first degree murder under section 187 of the California Penal

2   Code.  Petitioner's challenge is aimed specifically at the circumstantial nature of the evidence

3   against him.  However, as the Ninth Circuit has determined,  "[c]ircumstantial evidence and

4   inferences drawn from it may be properly form the basis of a conviction."  *Schad v. Ryan*, 606 F.3d

5   1022, 1038 (9th Cir. 2010) (citing *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995)).

6   *See also Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (internal citations omitted).  In

7   Petitioner's case, the circumstantial evidence introduced at his trial would permit a rational finder

8   of fact to conclude that Petitioner did, in fact, kill Shirley.  While Petitioner's account of Shirley's

9   death evolved over time, he ultimately claimed that he entered their bedroom and witnessed her raise

10  a gun to her own head.[2]  According to Petitioner, he attempted to grab the gun from Shirley's hand

11  and it accidentally fired.  Petitioner then claimed he called 911 five to eight seconds later, however

12  upon calling, he reported that he did not know what had happened to Shirley.  When his neighbor,

13  Robert Silva, arrived on the scene a few moments later, Petitioner did not tell him what had

14  happened.  Similarly, Petitioner told Officer Gary Anderson he did not know what happened to

15  Shirley.  Petitioner later said he lied about what happened because he feared he would implicate

16  himself in Shirley's death.

17          Silva testified that he entered Petitioner's residence and proceeded to the bedroom,

18  where he found Shirley lying on the bed, the left side of her body underneath the bed covers, a gun

19  on the right side of the bed near her right hand, and  a gunshot wound to her head.  According to

20  Silva's testimony, the blood around the wound appeared black and clotted.  Shirley's skin appeared

21  bluish in color, and her body was cool to the touch.  Likewise, Officer Anderson testified that he

22  found Shirley lying on the bed, her right arm outside of the bed coverings, and a handgun near her

23  right hand.  He also noted that Shirley's head wound was coagulated.

24

25          [2] Petitioner exercised his right not to testify on his own behalf at trial, but his varying
26  versions of the circumstances surrounding Shirley's death were related to the jury via the trial
    testimony of, *inter alia*, police detectives Nancy Sanchez and Gary Anderson.

Physical evidence introduced at trial indicated that gunshot residue was found on both of Petitioner's hands, and his fingerprint was on the gun. When asked, Petitioner acknowledged that there was a possibility that his finger could have been on the trigger of the gun. Gunshot residue was also found on both of Shirley's hands, even the left hand, which was underneath the bed covers when the police arrived. Toxicology reports reflected that Shirley had a substantial amount of Valium in her bloodstream at the time she died. According to one expert who testified at trial, this would have caused her to be minimally drowsy. Another expert offered testimony opining that the amount of Valium present in Shirley's system would have caused her to be nearly comatose. Evidence also showed that Shirley had not been prescribed any Valium, however Petitioner had been prescribed twenty Valium pills three weeks prior to Shirley's death. Expert testimony established that a head wound like Shirley's would have continued to bleed for at least five to ten minutes following her shooting, and that it would have taken her body hours to noticeably cool, thus calling into question Petitioner's claim that he called 911 within five to eight seconds after the shooting.

Although he initially told investigating officers that he and Shirley were inseparable and had a very loving relationship, it was later discovered that Petitioner was having an affair with a woman named Natalie Parks. When questioned, Parks was unaware that Petitioner was married and, in fact, Petitioner had told her that his wife had been deceased for several years. Petitioner continued to see Parks following Shirley's death and did not mention her death to Parks. Moreover, Petitioner told both Shirley's son and her brother that Shirley had died of pancreatic cancer.

Upon being confronted with the physical evidence inconsistent with his original narrative, Petitioner's explanations began to evolve. Petitioner initially denied his affair with Parks, but later admitted to it. He also initially denied having been prescribed Valium. He eventually admitted lying to the 911 dispatcher regarding what had happened to Shirley, and that he had lied to investigating officers about the circumstances surrounding Shirley's death. Petitioner, however, could offer no explanation for the inconsistencies between his evolved version of events and the contrasting physical evidence, such as the amount of time which had apparently passed before he

10

called 911.

Petitioner now claims that the above recited evidence does not directly prove that he killed Shirley. Petitioner contends his fingerprints were naturally on the gun because it belonged to him. He also argues that the gunshot residue found on both his and Shirley's hands can be explained by his claim that he reached for the gun in an attempt to prevent Shirley from killing herself. Moreover, Petitioner claims that his unfaithfulness to Shirley does not prove that he murdered her, pursuant to section 187 of the California Penal Code. Petitioner recognizes that he was not initially truthful with investigating officers, but explains that he was scared he would have implicated himself in Shirley's death. According to Petitioner, therefore, the prosecution failed to prove beyond a reasonable doubt that he killed Shirley.

Petitioner's alternative explanations for the incriminating circumstantial evidence admitted against him at trial do not provide an adequate basis for finding that the jurors were irrational in finding him guilty beyond a reasonable doubt of the first degree murder of his wife. As noted above, "[c]ircumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction." *Schad*, 606 F.3d at 1038 (citations omitted). Viewing the evidence in the light most favorable to the prosecution, it can be concluded that there was sufficient evidence introduced at Petitioner's trial from which a rational trier of fact could have found him guilty beyond a reasonable doubt. Petitioner has failed to meet the heavy burden required to demonstrate that he is entitled to federal *habeas corpus* relief on this claim.

## 2. EXPERT TESTIMONY

Petitioner claims that the trial court violated his state and federal rights to due process of law by allowing Officer Gary Anderson to "nominate himself an expert on suicide by women" and then allowing him to "advise the jury that the deceased - Ms. Branch's - death had not been the result of an attempted suicide." (Pet. at 4e.) The California Court of Appeal, First Appellate District, considered and rejected Petitioner's claim on the merits, explaining its reasoning as follows:

As noted above, Anderson testified that after he arrived at

11

[Petitioner's] house he became suspicious because, in the course of his career, he had only seen two cases in which a woman used a firearm to commit suicide and every woman had left a suicide note. [Petitioner] faults the trial court for allowing this testimony, arguing that Anderson should not have been allowed to offer these opinions because they were impermissible as expert testimony.  He claims Anderson "lacked the qualifications to testify in the area of suicides by women."

As Anderson began to testify regarding how his suspicions were aroused at the crime scene, [Petitioner] objected at various points on the following grounds: 1) that the prosecutor's questions were leading or suggestive, 2) that there was a lack of foundation for opinion evidence, 3) that the testimony invaded the jury's factfinding role, and 4) that the questioning called for speculation.

1. *Anderson Did Not Offer an Expert Opinion*

Although it is arguable that [Petitioner] did not preserve the issue he now raises on appeal by failing to specifically object on the ground that Anderson "lacked the qualifications to testify in the area of suicides by women," we nevertheless find no error. From our reading of the record, we do not believe that Anderson's testimony can be properly characterized as expert testimony.[FN2] He did not make any sweeping generalities about female suicides.   Nor did he opine specifically that he believed Shirley had not committed suicide.  He simply stated that his suspicions were aroused because, in his personal experience, he had not investigated any suicides involving females who did not leave a suicide note, and he had seen only two females use guns to kill themselves.   Thus, he did not offer an opinion that females always leave suicide notes or that they rarely use guns to commit the act.

> FN2.  Evidence Code section 720, subdivision (a), provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.   Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert."

Anderson's testimony is thus more properly characterized as lay opinion testimony.   Evidence Code section 800 provides: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony."  (See *People v. Farnam* (2002) 28 Cal.4th 107, 153-154.)

Anderson's opinions were based on his personal observations

regarding crime scenes that he had viewed over the course of his career. On this record, we cannot say that his testimony regarding his experience with female suicides lacked a rational basis, or that it failed to clarify his testimony. The testimony was helpful to the jury insofar as it was relevant to show why the officers might have been disposed to fully investigate Shirley's death, rather than simply closing the case as a suicide. Moreover, it is common knowledge that police officers are trained to assess potential crime scenes and that they often rely on their past experience in deciding whether further investigation is warranted. The trial court acted well within its discretion in permitting this lay opinion testimony. (See *People v. Farnam*, *supra*, 28 Cal. 4$^{th}$107, 153-154.)

2. *The Error, if Any, was Harmless*

In any event, we believe that even if the court did err in allowing Anderson's testimony, the error did not alter the outcome of the trial and, thus, does not warrant reversal. As [Petitioner's] counsel admits, "There is no gainsaying the incriminating evidence against Mr. Branch. He was having an affair. He lied to police. He had gunshot residue on his hands."

In our view, the evidence against [Petitioner] was even more substantial than his briefs acknowledge. The physical evidence, such as the dried blood, supported the view that Shirley was killed an appreciable time before [Petitioner] called 911. There was also evidence that she had significant quantities of Valium in her system that reasonably appeared to originate from a prescription [Petitioner] had recently obtained for himself. Additionally, there was a lack of testimony from those close to Shirley suggesting that she harbored any intentions to commit suicide.[FN3] Accordingly, even if the trial court did err, the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)[FN4]

> FN3. While witnesses testified that Shirley was upset that her husband was having an affair, her son, brother, and close friend all testified that Shirley had never mentioned thoughts of suicide.

> FN4. We reject [Petitioner's] assertion that the standard of review announced in *Chapman v. California* (1967) 386 U.S. 18 applies when assessing the impact of the improper admission of evidence.

(Lodged Ex. E at 4-6.)

To the extent that petitioner claims Officer Anderson's testimony was erroneously admitted at trial under California law, his claim is not cognizable on federal *habeas corpus* review. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S 62, 67-68 (1991) (reiterating that "it is not the

13

province of a federal habeas court to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of the United States Constitution."). A state court's evidentiary ruling is only subject to federal *habeas corpus* review if the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by federal due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). Accordingly, a federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). *See also Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). In order to obtain relief on the basis of an alleged evidentiary error, Petitioner bears the heavy burden of demonstrating that the error was one of constitutional dimension and that it was not harmless because it had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

As the California Court of Appeals recognized, Petitioner has mischaracterized Officer Anderson's testimony. Officer Anderson did not, in fact, testify as an expert witness, nor did he testify that Shirley did not commit suicide. Instead, Officer Anderson testified regarding his observations upon arriving at the scene of Shirley's death and his personal experience regarding female suicides he had observed during his career as a police officer, and the California Court of Appeal deemed the admission of his testimony appropriate under the California Evidence Code. A federal court conducting a *habeas corpus* review may not reexamine a state court's determination of a state law question. 28 U.S.C. § 2254(a); *Estelle*, 502 U.S at 67-68.

Moreover, Petitioner has failed to meet the heavy burden of demonstrating that the admission of Officer Anderson's testimony was an error of constitutional dimension in that it had a "substantial and injurious effect" on the jury's verdict. *Dillard*, 244 F.3d at 767 n.7. As noted by

the state appellate court, even absent Officer Anderson's testimony, evidence of Petitioner's guilt remained extensive.  A review of the record reflects that the jury was presented with evidence that Petitioner lied to police, was having an affair, had gunshot residue on his hands, and lied to Shirley's brother and son about the cause of her death.  There was also evidence that gunshot residue was on both of Shirley's hands, including the one that was underneath the bed coverings, Shirley had significant quantities of Valium in her bloodstream that appeared to originate from a prescription recently obtained by Petitioner for himself, and the coolness of Shirley's body temperature and coagulated blood on her head wound indicated that Shirley had been killed a considerable amount of time before Petitioner called 911.  Lastly, testimony from witnesses close to Shirley reflected that Shirley had never mentioned thoughts of suicide.  On this record, it cannot be said that the admission of Officer Anderson's testimony rendered Petitioner's trial fundamentally unfair as to violate his federal right to due process of law.  Nor was the state appellate court's resolution of this evidentiary issue contrary to or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to federal *habeas corpus* relief on this claim.

**B.  INEFFECTIVE ASSISTANCE OF COUNSEL**

### 1.  TRIAL COUNSEL

Petitioner claims that his trial counsel rendered ineffective assistance by failing to object to admission of evidence at trial that he threatened a neighbor with a gun in 1988.  According to Petitioner, trial counsel raised objections to the admission of said evidence pursuant to sections 350 and 352 of the California Evidence Code.  Petitioner now contends that had counsel objected to the evidence based on section 1101 of the California Evidence Code, the trial court would have sustained the objection.

The Sixth Amendment to the United States Constitution guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for determining whether counsel's assistance was ineffective in *Strickland v. Washington*, 466 U.S. 668 (1984).  To support a claim that counsel's performance was ineffective, a petitioner must first show that, considering all

15

the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id* at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-694. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id. See also Williams v. Taylor*, 529 U.S. 362, 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies....If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice...that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697). In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is, in addition, a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). Thus, a reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 689. The court does not consider whether another lawyer with the benefit of hindsight would have acted differently than trial counsel. *Id*. Instead, the court considers whether counsel made errors so serious that counsel failed to function as guaranteed by the Sixth Amendment. *Id*. at 687.

The California Court of Appeal, First Appellate District, considered and rejected

Petitioner's claim that his trial counsel rendered prejudicially ineffective assistance on the merits, explaining its reasoning as follows:

### 1. *Evidence of Prior Conduct*

[Petitioner] offered two witnesses who testified to his character as a non-violent person.   Neither witness had heard that in 1988 [Petitioner] pulled a gun on a neighbor and threatened him.   Both testified that if it were true, it might change their opinion of whether [Petitioner] could be violent.

In rebuttal, the prosecution called Dale Johnson to testify.   Johnson had been a neighbor of [Petitioner] in 1988.   Their relationship was tense because [Petitioner] did not like where Johnson chose to park his car.   One day, Johnson had just parked his car when [Petitioner] came out of his house and yelled at him.   He subsequently pulled a gun from under his bathrobe and put it up to Johnson's face.   Johnson contacted the authorities about this incident in 2004 when he read a newspaper article about [Petitioner's] arrest in this case.

### 2. *Evidence Code Section 1101*

Although evidence of a defendant's uncharged misconduct is generally inadmissible to show bad character or criminal propensity (*People v. Catlin* (2001) 26 Cal.4th 81, 145; Evid. Code § 1101, subd. (a)),[FN5] when a defense witness testifies about the defendant's good character traits, the prosecutor may test the validity of the witness's opinion or reputation testimony by asking limited questions about whether the witness has heard of acts by the defendant inconsistent with those character traits.   (Evid. Code § 1102, subd. (b);[FN6] *People v. Ramos* (1997) 15 Cal.4th 1133, 1173; *People v. McKenna* (1938) 11 Cal.2d 327, 335-336; *People v. Hempstead* (1983) 148 Cal.App.3d 949, 953-954).   However, under this rule of admissibility the prosecutor may not present specific acts of misconduct.   (1 Witkin, Cal. Evidence (4th ed. 2000) Circumstantial Evidence, § 56, p. 388; *People v. Felix* (1999) 70 Cal.App.4th 426, 431-433; see *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1528.) It thus appears that defense counsel could have objected to the admission of Johnson's testimony regarding the gun waving incident under section 1101.   His failure to do so, however, does not necessarily constitute ineffective assistance.

> FN5. Evidence Code section 1101, subdivision (a), provides: "Except as provided in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

FN6.  Evidence Code section 1102 provides: "In a criminal action, evidence of the defendant's character or trait of his character in the form of an opinion or evidence of his reputation is not made inadmissible by section 1101 if such evidence is:

(a) Offered by the defendant to prove his conduct in conformity with such character or trait of character.

(b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a).

3.  *Tactical Reasons Preclude a Finding of Ineffective Assistance*

"'"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" [Citations.] "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation].  "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." [Citation.] [¶] In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]' [Citation.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)  In particular, we note: "An attorney may choose not to object [to inadmissible evidence] for many reasons, and the failure to object rarely establishes incompetence of counsel."  (*People v. Kelly* (1992) 1 Cal.4th 495, 540.)

In the present case, we agree with the Attorney General that [Petitioner's] counsel may have had a tactical reason to refrain from raising the Evidence Code section 1101 objection.  The jury had previously been made aware of [Petitioner] having possibly threatened someone with a gun during the prosecution's cross-examination of [Petitioner's] character witnesses.  Thereafter, when Johnson took the stand and the prosecutor examined him in a fashion that introduced independent proof of the confrontation, defense counsel knew that the jury had already been properly apprised of the possible threat via the examination of [Petitioner's] good character witness.  Defense counsel could reasonably determine that it was better for defendant to be given an opportunity to undermine Johnson's testimony rather than to seek to exclude the evidence elicited by the prosecutor.

Regardless of whether [Petitioner's] counsel did or did not have a legitimate tactical reason for refraining from objecting to Johnson's testimony, there is no reasonable probability of a different result had

defendant's counsel moved to exclude this evidence.  (*People v. Watson*, *supra*, 46 Cal.2d 818, 836.)  As shown in our discussion above regarding Anderson's testimony, the evidence against [Petitioner] was substantial.  To the extent trial counsel failed to lodge appropriate objections, no ineffective assistance can be established in the absence of any showing of prejudice. (*People v. Boyette* (2002) 29 Cal.4th 381, 430-431.)  It is not reasonably probable that the jury would have reached a result more favorable to [Petitioner] if Johnson's testimony had been excluded.

(Lodged Ex. E at 6-9.)

The decision of the California Court of Appeal rejecting Petitioner's that trial counsel failed to object, pursuant to section 1101 of the California Code of Evidence, to the admission of evidence that Petitioner threatened a neighbor with a gun in 1988 is not contrary to or an unreasonable application of federal law, nor is it based upon an unreasonable determination of the facts.  As explained by the appellate court, Petitioner has failed to demonstrate that trial counsel's failure to object to the evidence based on section 1101 was objectively unreasonable or that it was not the result of a reasonable, tactical decision.  Indeed, the record reflects that counsel did object to the evidence pursuant to sections 350 and 352 of the California Evidence Code.  Moreover, even assuming *arguendo* that counsel's decision was unreasonable, Petitioner has failed to demonstrate the requisite prejudice.  As noted by the appellate court and discussed extensively in section (V)(A)(1) above, substantial evidence of Petitioner's guilt was presented to the jury.  It is thus unlikely that the outcome of Petitioner's trial would have been different had counsel made the proposed objection and the jury had not heard evidence that Petitioner threatened a neighbor with a gun in 1988.  Petitioner is not entitled to federal *habeas corpus* relief on this claim.

## 2. APPELLATE COUNSEL

Petitioner claims that appellate counsel rendered prejudicially ineffective assistance by failing to (a) make a claim on appeal regarding the insufficiency of the evidence relied upon by the jury to convict Petitioner at trial.  In addition, Petitioner claims appellate counsel failed to "federalize and argue" his claims that (b) trial counsel rendered prejudicially ineffective assistance; and (c) that Officer Anderson's "expert" testimony should have been excluded.

The *Strickland* standards discussed above apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). An indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Counsel must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel was not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy."). There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice). Thus, counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434. In order to demonstrate prejudice in the appellate context, Petitioner must show that, but for appellate counsel's errors, he would likely have prevailed on appeal.

The merits of each of the three individual claims forming the basis for Petitioner's ineffective assistance of appellate counsel claim have been discussed extensively and rejected above. Because the claims are without merit, appellate counsel's performance cannot fall outside the bounds of reasonably competent professional assistance. As noted above, there is no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88. Moreover, there is no indication that Petitioner suffered any prejudice as a result of counsel's alleged errors. In other words, Petitioner has failed to prove that, but for appellate counsel's alleged errors, any of the three claims would have, in fact, been successful on appeal. Petitioner is not entitled to *habeas corpus* relief on his ineffective assistance of appellate counsel claim.

## VI. CONCLUSION

IT IS RECOMMENDED that Petitioner's petition for writ of *habeas corpus* be denied. These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 5, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE